UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JODY A. MASON,

        Plaintiff,

v.                                  Case No. 1:16-cv-989

COMMISSIONER OF SOCIAL        Hon. Ray Kent
SECURITY,

        Defendant.
_____/

**OPINION**

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of

a final decision of the Commissioner of the Social Security Administration (Commissioner) denying

her claim for disability insurance benefits (DIB).

Plaintiff alleged a disability onset date of January 20, 2013. PageID.200. Plaintiff

identified her disabling conditions as: bipolar with psychosis; degenerative disc disease;

schizoaffective disorder bipolar type; complex regional pain syndrome; osteoarthritis; and panic

attacks. PageID.203. Prior to filing her application for DIB, plaintiff completed two years of college

and canine grooming school, and had past employment as a veterinary assistant, dog groomer and

receptionist. PageID.78-81, 204. The administrative law judge (ALJ) reviewed plaintiff's claim *de*

*novo* and entered a written decision denying benefits on April 17, 2015. PageID.52-66. This

decision, which was later approved by the Appeals Council, has become the final decision of the

Commissioner and is now before the Court for review.

## I.  LEGAL STANDARD

This Court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. §405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Services*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Services*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence *de novo*, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. § 404.1505; *Abbott v. Sullivan*, 905 F.2d 918, 923

(6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

## II. ALJ'S DECISION

Plaintiff's claim failed at the fifth step of the evaluation. At the first step, the ALJ found that plaintiff did not engage in substantial gainful activity during the relevant time period,

3

which is from January 20, 2013 (her alleged onset date) through June 30, 2014 (her date last insured). PageID.54. At the second step, the ALJ found that through the date last insured, plaintiff had severe impairments of: obesity; complex regional pain syndrome of the right lower extremity; status post lumbar laminectomy; sciatica; lumbar radicular syndrome of the right lower extremity; degenerative disc disease of the lumbar spine; schizoaffective disorder; anxiety disorder, not otherwise specified; posttraumatic stress disorder (PTSD); and cannabis abuse in early remission. PageID.54. At the third step, the ALJ found that, through the date last insured, plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1. PageID.55.

The ALJ decided at the fourth step that, "through the date last insured, the claimant had the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except she is limited to simple work and may not perform any fast paced work." PageID.56. The ALJ also found that plaintiff was unable to perform any past relevant work. PageID.64.

At the fifth step, the ALJ determined that through the date last insured, plaintiff could perform a significant number of unskilled, sedentary exertional jobs in the national economy. PageID.64-65. Specifically, the ALJ found that plaintiff could perform the following unskilled work in the region (defined as the State of Michigan): bench assembler (4,900 jobs); inserter (3,600 jobs); and sorter (5,000 jobs). PageID.65. Accordingly, the ALJ determined that plaintiff has not been under a disability, as defined in the Social Security Act, from January 10, 2013 (the alleged onset date) through June 30, 2014 (the date last insured). PageID.65-66.

4

**III.    DISCUSSION**

Plaintiff has raised two issues on appeal related to her mental limitations[1]:

**A.     The ALJ failed to properly evaluate the medical opinion evidence and to properly determine plaintiff's mental RFC.**

**1.      Dr. Thebert's opinions**

Plaintiff contends that the ALJ erred by giving only limited weight to the opinions of her treating psychiatrist, Michael Thebert, M.D.  A treating physician's medical opinions and diagnoses are entitled to great weight in evaluating plaintiff's alleged disability.  *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001).  "In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once."  *Walters v. Commissioner of Social Security*, 127 F.3d 525, 529-30 (6th Cir. 1997).  "The treating physician doctrine is based on the assumption that a medical professional who has dealt with a claimant and his maladies over a long period of time will have a deeper insight into the medical condition of the claimant than will a person who has examined a claimant but once, or who has only seen the claimant's medical records."  *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994).   Under the regulations, a treating source's opinion on the nature and severity of a claimant's impairment must be given controlling weight if the Commissioner finds that: (1) the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques; and (2) the opinion is not inconsistent with the other substantial evidence in the case record.  *See Gayheart v. Commissioner of Social Security*, 710 F.3d 365, 375 (6th Cir. 2013); 20 C.F.R. § 404.1527(c)(2).  Finally, the ALJ must articulate good reasons for not crediting the opinion of a treating source.  *See Wilson v.*

---

[1] Plaintiff does not dispute the ALJ's decision with respect to her physical limitations.

*Commissioner of Social Security*, 378 F.3d 541, 545 (6th Cir. 2004); 20 C.F.R. § 404.1527(c)(2)

("[w]e will always give good reasons in our notice of determination or decision for the weight we

give your treating source's opinion").

Here, the ALJ evaluated three opinions given by Dr. Thebert. The ALJ gave limited

weight to the doctor's opinions expressed in an April 29, 2014 questionnaire (PageID.763-770):

> [T]he undersigned has considered the April 2014 psychiatric assessment from Dr. Thebert who assessed the claimant with numerous marked limitations in the areas of her ability to sustain concentration and persistence, in her ability to interact socially and adaptation incapable of even low stress work, psychosis restricts any work and [sic] would miss more than three times a month (Exhibit 8F). However, he found her only moderately limited in her ability to understand, remember and carry out one or two step instructions; interact appropriately with the general public, ask simple questions or request assistance; feels reasonable [sic] well when not in a stressful environment (Exhibit 8/F). In deciding whether or not to adopt the treating source's opinion in this situation, the following factors are to be considered along with any other appropriate factors: the examining relationship, the treatment relationship in terms of its frequency and duration, supportability, consistency, and specialization. Particular attention is to be given to the consistency of the opinion with other evidence, the qualifications of the source, and the degree to which the source offers supporting explanations for the opinion (20 CFR 404.1527(d) & (f) and Social Security Ruling 96-2p ).
>
> The assessment of Dr. Thebert with numerous marked limitations is afforded limited weight as it is inconsistent with the claimant's treatment and outpatient therapy notes, which showed the claimant had improvement in her symptoms with her prescribed medication regimen and outpatient counseling. Her mental status exams were relatively normal with only occasional mood fluctuations and her intermittent increase in symptoms were noted to be possibly associated with her pain symptomatology (Exhibit 3F/66, 73). Moreover, the undersigned notes that the GAF rating is only a subjective estimate by a clinician, however Dr. Thebert assigned a GAF rating of 55 consistently throughout his records, Exhibit 3F/10, 16, 23, 30, 36, 42, 55, 62, 69, 76, 82, 88, 94; 6F/28, 55; 7F/109, 120, 130, 131; 55; 10F/11, 22, 33, 44; 13F/10, 21, 32; 15F/54), which is inconsistent with his statement of disability and is more consistent with the signs and findings upon examination in the record. Furthermore, the record noted her hallucinations were essentially non-existent, but appeared to be more prominent when the claimant was using cannabis with her prescribed medications. She acknowledged that her cessation of cannabis helped with her hallucinations (Exhibit 16F/l ).

PageID.63.

> The ALJ gave limited weight to Dr. Thebert's June 3, 2015 opinion (PageID.771):

> Moreover, in June 2014 Dr. Thebert opined the claimant was unable to work at all; she will never be able to hold any type of employment (Exhibit 9F). The statement is afforded limited weight as it is vague and does not offer function by function limitations.

PageID.63.

> Finally, the ALJ gave limited weight to Dr. Thebert's statement regarding the effect

of plaintiff's use of "drugs and/or alcohol" dated October 28, 2014 (PageID.1036):

> Subsequently in an October 2014 statement from Dr. Thebert, which stated that the claimant's DA&A [drug and alcohol abuse] is not material, and she is totally disabled without consideration of any past or present drug and or alcohol use (Exhibit 14F). This statement is afforded limited weight, because the conclusion as to whether an individual satisfies the statutory definition of "disability" is an issue that is reserved to the Commissioner of Social Security (Social Security Ruling 96-5p; 20 CFR 404.1527). Moreover, the materiality of DA&A is a legal question and not solely a medical issue to be determined by the doctor.

PageID.63-64.[2]

### 2.    The ALJ's evaluation of the medical record

Plaintiff contends that the ALJ gave only limited weight to Dr. Thebert's opinions,

due to the ALJ's erroneous conclusion that the doctor's opinions conflicted with the treatment

records. In this regard, plaintiff contends that the ALJ's reference to plaintiff's mental status exams

as "relatively normal" was contrary to the evidence and not a basis for discounting the doctor's

---

[2] The Court notes that this opinion evaluated plaintiff's condition as it existed about four months after her last insured date. "[I]nsured status is a requirement for an award of disability insurance benefits." *Garner v. Heckler*, 745 F.2d 383, 390 (6th Cir.1984). Evidence of a claimant's medical condition after the last insured date is only considered to the extent it illuminates that condition before the expiration of the claimant's insured status. *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir.1988).

7

opinion. The time frame at issue in this case is about 18 months, i.e., from plaintiff's alleged disability onset date of January 20, 2013 through her date last insured of June 30, 2014. To place plaintiff's medical history in context and to respond to plaintiff's claim, the Court will set forth the ALJ's review evaluation of that evidence in its entirety:

> Addressing the claimant's schizoaffective disorder, anxiety disorder, not otherwise specified, posttraumatic stress disorder and cannabis abuse in early remission, the claimant has a history of mental health issues. On January 24, 2013, the claimant was admitted to Forest View due to increasing depression and anxiety along with hallucinations (Exhibit lF/14-21). During the course of admission, she participated in the trauma program and was able to improve her insight and be a part of her improvement. Her medications were adjusted and she was cooperative with both one on one therapy as well as group therapy (Exhibit lF/14-27). At discharge, the claimant was not suicidal, her hallucinations had decreased to zero and her anxiety and depression had reduced to a manageable level. As a result, the claimant was discharged to the partial program so that she could continue to receive support while she continued to improve (Exhibit lF/4-7).

> Outpatient records from Pine Rest through March 2013 noted there was mutual decision between the claimant and her therapist to terminate partial hospital treatment. She was transferred to dialectical behavior therapy (DBT), which was helpful in the past. However, it was going to be a period of several weeks before she could start the DBT treatment and the claimant declined any treatment until then (Exhibit 6F/1). April 2013, records from Frieda-Aboul-Fotuh, M.D., a psychiatrist, noted the claimant had improved since restarting Cymbalta and she was happy with her medication treatment regimen (Exhibit 6F/25). He recommended she continue therapy. In addition, she was no longer hallucinating. Moreover, while she indicated she was struggling with organization, she had missed her last appointment with Dr. Fotuh and her last two therapy appointments (Exhibit 6F/27).

> Pine Rest Northwest Clinic progress notes for outpatient therapy, from Rebecca Doane, LMSW covering the period May 2013 through October 2013, and a psychosocial evaluation, noted the claimant reported she was very depressed and had not left the house for two weeks, she would sit in a chair, surf the internet and sleep (Exhibit 3F/2). She had symptoms of anxiety and worry, decreased energy, depressed mood and sleep disturbance (Exhibit 3F/25). Diagnosis included schizoaffective disorder, anxiety disorder, not otherwise specified and cannabis abuse in remission (Exhibit 3F/10). The claimant's medications included Xanax, Cymbalta, Seroquel, Gabapentin and Topiramate (Exhibit 3F/25). After a few months with medications and outpatient therapy, the claimant reported she was feeling better

(Exhibit 3F/27), she had increased motivation, she was doing chores and showering, and was making lifestyle changes to her diet and exercise (Exhibit 3F/59). While at times she had an increase in mental symptoms, it was noted it could be related to her pain, as her physical pain was more an issue than her depression (Exhibit 3F/66, 73). Moreover, while she had occasionally hallucinated, she stated she knew what the hallucinations were and had no desire or intent to act on any emotion brought about by the hallucinations. Additionally, the records noted she was not a suicidal or homicidal risk (Exhibit 3F/73). Furthermore, it was noted she was using cannabis semi-regularly, even though she told Dr. Mankoff she would quit (Exhibit 3F/91).

Additional records from February 2014 to April 2014 on exam noted the claimant had appropriate dress, she was friendly, had good eye contact, was calm, had a steady gait and normal rate of speech. Her conversation was intact and she had no hallucinations, or delusions (Exhibit 7F/106-108). Moreover, her affect was euthymic, and her thought process was logical and linear (Exhibit 7F/118, 130). The claimant continued with outpatient therapy through July 2014, with relatively normal mental status exams, and no evidence of hallucinations or delusions. At times she had an anxious affect, but she made good eye contact, was friendly, she was sleeping better and her mood was fair. Dr. Thebert made medications adjustments as needed (Exhibit l0F/2-43). July 2014 records from Dr. Mankoff, from the Pain Clinic noted the claimant reported she had not hallucinated and indicated she had stopped using cannabis, which helped with the decreased hallucinations (Exhibit 16F/1). Dr. Thebert noted the claimant's cannabis use was in early remission, she testified she had quit using cannabis.

Subsequent records through October 2014 noted the claimant continued with outpatient treatment. She reported she was feeling better, her appetite was lower, and her mood seemed to be stabilizing. She had relatively normal mental status exams. Although she had some noted fluctuations in her mood, she had no significant recurrent hallucinations or suicidal ideation (13F/4-31).

The undersigned notes the record contains multiple global assessment of functioning (GAF) scores, ranging from 25 (Exhibit lF/20) on admission for psychiatric treatment, which indicated some danger of hurting self or others or occasionally fails to maintain minimum personal hygiene or gross impairment in communication; 63 (Exhibit lF/4) at discharge, which indicated some mild symptoms or some difficulty in social, occupational or school functioning but generally functioning pretty well, has some meaningful interpersonal relationships; 45 (Exhibit 6F/1), which indicated some impairment in reality testing or communication or major impairment in several area, such as work or school, family relations, judgment, thinking or mood and GAF ratings of 55, throughout the records from Dr. Thebert, which indicated only moderate symptoms or moderate difficulty in social, occupation or school functioning as set forth in the Diagnostic and Statistical Manual of Mental

Disorders (DSM) (Exhibit 3F/10, 16, 23, 30, 36, 42, 55, 62, 69, 76, 82, 88, 94; 6F/28, 55; 7F/109, 120, 130, 131; 55; l0F/ 11, 22, 33, 44; 13F/10, 21, 32; 15F/54). The undersigned affords little weight to these opinions, as GAF scores are highly subjective and non-standardized, as evidenced by the range of scores. Furthermore, GAF scores do not assign corresponding functional limitations and do not indicate whether the scores are intended to describe symptom severity or limitations in functioning.

PageID.59-61.

In her brief, plaintiff provides a list of citations to the medical record which she contends are contrary to the ALJ's evaluation of the medical evidence and demonstrate that clinical findings checked off in Dr. Thebert's April 29, 2014 questionnaire (PageID.764) are "wholly consistent with the mental status exams":

Dr. Thebert stated that the limitations he found for Plaintiff were based on evidence of mood disturbance, emotional lability, delusions or hallucinations, and perceptual disturbances (PageID.764). These findings are wholly consistent with mental status examinations throughout the period at issue (PageID.334-336, 617, 620, 623, 625, 632, 635-638, 657-659, 669, 680, 691, 702, 713, 724, 735, 781, 792, 802, 814, 1010, 1021, and 1032-1033) and are appropriate medical findings in the context of mental impairments.

Plaintiff's Brief at PageID.1142.

Plaintiff's argument consists of an invitation for this Court to review 30 pages of mental examination records and then determine that Dr. Thebert's April 29, 2014 clinical findings of mood disturbance, emotional lability, delusions or hallucinations, and perceptual disturbances are "wholly consistent" with the results of those examinations. Plaintiff's invitation is beyond the scope of this review. It is the ALJ's responsibility to weigh conflicting evidence. *See Buxton v. Halter*, 246 F.3d 762, 775 (6th Cir. 2001). The ALJ performed an extensive review of the medical evidence and evaluated Dr. Thebert's opinion in light of that evidence. It is not this Court's task to review the evidence *de novo*, make credibility determinations, or weigh the evidence. *Brainard*, 889 F.2d

at 681.  *See Reynolds v. Commissioner of Social Security*, 424 Fed. Appx. 411, 414 (6th Cir. 2011) ("This court reviews the entire administrative record, but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ.").  The purpose of this Court's review is to determine whether there is substantial support for the ALJ's decision in the record.  *Willbanks*, 847 F.2d at 303.  Based on this record, the ALJ gave good reasons for the weight assigned to Dr. Thebert's opinions, and those reasons are supported by substantial evidence as set forth in the ALJ's decision.  Accordingly, this claim of error is denied.

### 3.    GAF scores

Plaintiff contends that the ALJ improperly relied on her GAF scores. The Court disagrees.  The GAF score is a subjective determination that represents "the clinician's judgment of the individual's overall level of functioning" on a hypothetical continuum of mental health-illness. American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders (DSM-IV-TR)*, (4th ed., text rev., 2000), pp. 32, 34.  The GAF score is taken from the GAF scale, which rates individuals' "psychological, social, and occupational functioning," and "may be particularly useful in tracking the clinical progress of individuals in global terms."  *Id*. at 32. The GAF scale ranges from 100 to 1.  *Id.* at 34.  At the high end of the scale, a  person with a GAF score of 100 to 91 has "no symptoms."  *Id.*  At the low end of the GAF scale, a person with a GAF score of 10 to 1 indicates "[p]ersistent danger of hurting self or others (e.g., recurrent violence) OR persistent inability to maintain minimal personal hygiene OR serious suicidal act with clear expectation of death."  *Id.*

As the Sixth Circuit explained in *Kennedy v. Astrue*, 247 Fed. Appx.761 (6th Cir.

2007):

> GAF is a clinician's subjective rating of an individual's overall psychological functioning. A GAF score may help an ALJ assess mental RFC, but it is not raw medical data. Rather, it allows a mental health professional to turn medical signs and symptoms into a general assessment, understandable by a lay person, of an individual's mental functioning.

*Kennedy*, 247 Fed. Appx. at 766.

The Sixth Circuit has observed that a GAF score "may have little or no bearing on the

subject's social and occupational functioning," *Kornecky v. Commissioner of Social Security*, 167

Fed. Appx. 496, 511 (6th Cir.2006), and rejected the proposition that a determination of disability

can be based solely on the unsupported, subjective determination of a GAF score, *Rutter v.

Commissioner of Social Security*, No. 95-1581, 1996 WL 397424 at *2 (6th Cir. July 15, 1996).

Furthermore, there are no "statutory, regulatory, or other authority requiring the ALJ to put stock in

a GAF score in the first place." *Kornecky*, 167 Fed. Appx. at 511. *See Oliver v. Commissioner of

Social Security*, 415 Fed. Appx. 681, 684 (6th Cir. 2011) ("[t]he GAF scale . . . does not have a

direct correlation to the severity requirements in [the agency's] mental disorders listings"), quoting

Response to Comment, Final Rules on Revised Medical Criteria for Evaluating Mental Disorders and

Traumatic Brain Injury, 65 FR 50746, 50764-65 (Aug. 21, 2000).

Here, the ALJ referred to the GAF scores for the purpose of pointing out that Dr.

Thebert used this diagnostic tool on numerous occasions and that on those occasions made the

subjective determination that plaintiff had a GAF score of 55. PageID.63.[3] Under the GAF scale

---

[3] While the ALJ was faced with multiple GAF scores in this case, it is unclear to this Court whether GAF scores will have any relevance in determining future disability claims. As one court observed, the current edition of the *Diagnostic and Statistical Manual of Mental Disorders* no longer uses the GAF scale:

these scores indicate "moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR any moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)." *DSM-IV-TR* at p. 34. Assuming that Dr. Thebert considered a GAF score of 55 to mean "moderate symptoms" as noted in the *DXM-IV-TR*, the ALJ found that this score was inconsistent with the doctor's statement of disability. PageID.63. The ALJ did not err in attempting to reconcile one of Dr. Thebert's diagnostic tools (the GAF score) with the medical record and the doctor's opinions. *See generally Buxton v. Halter*, 246 F.3d 762, 775 (6th Cir. 2001) (observing that the ALJ has "the enormous task of making sense of the record, reconciling conflicting medical opinions and evidence, and weighing the credibility of [the claimant's] subjective complaints").

### 4. ALJ's mental residual functional capacity (RFC) is not supported by medical evidence

RFC is a medical assessment of what an individual can do in a work setting in spite of functional limitations and environmental restrictions imposed by all of his medically determinable impairments. 20 C.F.R. § 404.1545. It is defined as "the maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs." 20 C.F.R. Part 404, Subpt. P, App. 2, § 200.00(c).

---

The most recent (5th) edition of the *Diagnostic and Statistical Manual of Mental Disorders* does not include the GAF scale. The American Psychiatric Association has explained, "Clinician-researchers . . . have conceptualized [the] need for treatment as based on diagnosis, severity of symptoms and diagnosis, dangerousness to self or others, and disability in social and self-care spheres. We do not believe that a single score from a global assessment, such as the GAF, conveys information to adequately assess each of these components, which are likely to vary over time." http://www.dsm5.org ("FAQs About DSM-5 Implementation -- For Clinicians").

*Judy v. Colvin*, No. 3:13CV00257, 2014 WL 1599562 at *9 (S.D. Ohio April 21, 2014), report and recommendation adopted, 2014 WL 1900614 (May 9, 2014).

Plaintiff contends that the ALJ failed to cite medical evidence to support the mental

RFC. Here, the ALJ found that through the date last insured, plaintiff had the RFC to perform

sedentary work "except she is limited to simple work and may not perform any fast paced work."

PageID.56. "[T]he ALJ is charged with the responsibility of determining the RFC based on her

evaluation of the medical and non-medical evidence." *Rudd v. Commissioner of Social Security*, 531

Fed. Appx. 719, 728 (6th Cir. 2013). In evaluating a claimant's RFC, "the ALJ need only articulate

how the evidence in the record supports the RFC determination, discuss the claimant's ability to

perform sustained work-related activities, and explain the resolution of any inconsistencies in the

record." *Delgado v. Commissioner of Social Security*, 30 Fed.Appx. 542, 547-548 (6th Cir. 2002)

(citations and quotation marks omitted).

The ALJ's explained plaintiff's mental RFC in pertinent part as follows:

> In sum, the above residual functional capacity assessment is supported by the
> medical evidence of record. . . The undersigned finds that the preponderance of
> credible evidence establishes that the claimant experienced no greater than mild to
> moderate functional limitations upon her ability to perform basic work activities.

PageID.64. Plaintiff contends that this explanation is insufficient because the ALJ failed to cite any

specific medical evidence and did not rely on any persuasive non-medical facts. The Court

disagrees. Support for the ALJ's RFC can be found in Dr. Thebert's April 29, 2014 opinion, in

which the doctor stated that plaintiff was only moderately limited: in her ability to understand,

remember and carry out one or two step instructions; in her ability to interact appropriately with the

general public, ask simple questions or request assistance; and that she feels reasonably well when

not in a stressful environment. PageID.63, 766-768. As discussed, the ALJ did not outright reject

the doctor's opinions, but gave them "limited weight." Based on the record as a whole, it appears

to the Court that the ALJ gave some weight to these moderate restrictions, which support the RFC limiting plaintiff to simple work that is not fast paced.

While the basis for the ALJ's mental RFC determination could have been better articulated, it is supported by evidence in the record. The Court finds no basis to remand this matter back to the administrative agency. *See Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1989) ("No principle of administrative law or common sense requires [a reviewing court] to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result."). Accordingly, plaintiff's claim of error is denied.

### B. The ALJ failed to properly evaluate plaintiff's credibility.

Plaintiff contends that the ALJ failed to properly evaluate her credibility. An ALJ may discount a claimant's credibility where the ALJ "finds contradictions among the medical records, claimant's testimony, and other evidence." *Walters*, 127 F.3d at 531. "It [i]s for the [Commissioner] and his examiner, as the fact-finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony." *Heston*, 245 F.3d at 536, *quoting Myers v. Richardson*, 471 F.2d 1265, 1267 (6th Cir. 1972). The court "may not disturb" an ALJ's credibility determination "absent [a] compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001). The threshold for overturning an ALJ's credibility determination on appeal is so high, that the Sixth Circuit has expressed the opinion that "[t]he ALJ's credibility findings are unchallengeable," *Payne v. Commissioner of Social Security*, 402 Fed. Appx. 109, 113 (6th Cir. 2010), and that "[o]n appeal, we will not disturb a credibility determination made by the ALJ, the finder of fact . . . [w]e will not try the case anew, resolve conflicts in the evidence, or decide questions of credibility."

*Sullenger v. Commissioner of Social Security*, 255 Fed. Appx. 988, 995 (6th Cir. 2007).

Nevertheless, an ALJ's credibility determinations regarding subjective complaints must be

reasonable and supported by substantial evidence. *Rogers v. Commissioner of Social Security*, 486

F.3d 234, 249 (6th Cir. 2007).

> The ALJ evaluated plaintiff's credibility in pertinent part as follows:

In assessing the claimant's credibility the undersigned has considered the claimant's allegations and symptoms. While the claimant has confirmed obesity, complex regional pain syndrome of the right lower extremity, status post lumbar laminectomy, sciatica, lumbar radicular syndrome of the right lower extremity, degenerative disc disease of the lumbar spine, schizoaffective disorder, anxiety disorder, not otherwise specified, posttraumatic stress disorder, and cannabis abuse in early remission that could cause problems with daily and work functioning, however, the totality of the evidence does not support total disability. The claimant's physical exams were essentially normal. . .

Furthermore, the record documents multiple periods of relatively normal mental functioning, which were accompanied by essentially stable or normal moods with treatment, she was alert and oriented, had no psychosis, she was articulate and able to converse appropriately, her memory was intact and her thought process was intact. The claimant has psychological symptoms, but has been prescribed and takes medications with some noted positive results as well as a positive response from outpatient therapy. Additionally, she has not required emergent care or inpatient psychiatric hospitalization for exacerbation of psychiatric symptoms, since January 2013.

Additionally, while the claimant reported episodes of hallucinations in the record, there were references that her hallucinations were prominent when she used cannabis. The claimant acknowledged that when she had stopped using cannabis in combination with her prescribed medications, her hallucinations were improved (Exhibit 16F/1).

While obesity, complex regional pain syndrome of the right lower extremity, status post lumbar laminectomy, sciatica, lumbar radicular syndrome of the right lower extremity, degenerative disc disease of the lumbar spine, schizoaffective disorder, anxiety disorder, not otherwise specified, posttraumatic stress disorder and cannabis abuse in early remission could cause physical and mental symptoms, the claimant's description of the symptoms are inconsistent with her performance on exams, her positive response to medication, injection therapy, physical therapy,

findings on diagnostic testing, and no required need for additional surgical intervention, her positive response to outpatient mental therapy, no additional emergent care for exacerbation of psychiatric symptoms and no significant limitations in performing her daily activities of living and the record as a whole. Although these inconsistencies in the claimant's presentation do not mean she is unimpaired, it supports the conclusion that she retains some ability to work. Accordingly, the undersigned finds that the claimant's statements concerning the intensity, persistence and limiting effects of her alleged symptoms are not fully credible (20 CFR 404.1529 and 416.929 and SSR 96-7p ).

As a result, the above limitations in the residual functional capacity would more than fully accommodate her obesity, complex regional pain syndrome of the right lower extremity, status post lumbar laminectomy, sciatica, lumbar radicular syndrome of the right lower extremity, degenerative disc disease of the lumbar spine, schizoaffective disorder, anxiety disorder, not otherwise specified, posttraumatic stress disorder and cannabis abuse in early remission.

PageID.61-62.

Plaintiff contends that the ALJ's credibility determination is not supported by substantial evidence noting (1) that there is a lack of evidence that plaintiff had significant or sustained improvement with treatment and absent use of marijuana, (2) that the ALJ grossly mischaracterized the record by finding that overall she had "relatively normal mental functioning" during the period at issue, and (3) the fact that plaintiff was not psychiatrically hospitalized since January 2013 does not mean she is not mentally disabled. PageID.1146-1148. Other than a cursory complaint about the "boilerplate language that appears almost universally in ALJ decisions benefits," plaintiff raises no arguments with respect to credibility, relying on his previous arguments with respect to the matters raised in items (1) and (2). PageID.1146-1147. As discussed, *supra*, the Court has rejected these arguments.[4]

---

[4] The Court notes that plaintiff did not develop an argument with respect to the ALJ's failure to address the effect of her cannabis use.

Finally, in item (3), plaintiff takes issue with the ALJ's reasoning that plaintiff experienced "multiple periods of relatively normal mental functioning" as evidenced, in part, by her lack of required emergent care or inpatient psychiatric hospitalization for exacerbation of psychiatric symptoms since January 2013. Plaintiff contends that the ALJ erred in referring to plaintiff's lack of psychiatric hospitalization, citing *Voigt v. Colvin*, 781 F.3d 871, 876 (7th Cir. 2015) ("[t]he institutionalization of the mentally ill is generally reserved for persons who are suicidal, otherwise violent, demented, or (for whatever reason) incapable of taking even elementary care of themselves."). In this case, the ALJ did not rely on plaintiff's lack of psychiatric hospitalization as the basis for the credibility determination; rather, plaintiff's need for hospitalization was only one of several factors mentioned. Given that plaintiff was hospitalized within days of the alleged disability onset date, it was not unreasonable for the ALJ to consider plaintiff's lack of later hospital admissions as one factor in determining whether her claim of a disabling mental impairment was credible. Accordingly, plaintiff's claim of error is denied.

## IV. CONCLUSION

The ALJ's determination is supported by substantial evidence. The Commissioner's decision will be **AFFIRMED** pursuant to 42 U.S.C. § 405(g). A judgment consistent with this opinion will be issued forthwith.


Dated: September 21, 2017          /s/ Ray Kent
                                   RAY KENT
                                   United States Magistrate Judge